TUCKER, Judge.
Ross, on the 7th day of November, 1797, became special bail for Henry Banks, in an action of debt, at the suit of Randolph, at the time that Banks was actually imprisoned in Philadelphia. Judgment being afterwards obtained against Banks, a ca. sa. was issued, and “not found,” was thereon returned; whereupon a scire facias was issued, and executed, against Ross, returnable to March court 1798, for Henrico county. The court made an order allowing Ross forty days after Banks should be enlarged, for his surrender, &c. Upon a writ of procedendo from the district court, this order was set aside. Whereupon Ross, at the rules, filed a special plea, alleging that Banks, on the 14th day of November, 1797, and afterwards, on such and such days therein mentioned, and at the time of pleading his plea, was in confinement, by virtue of legal process, in Philadelphia. But the plea does not allege that he continued in confinement from the first of those days to the last. To this plea, the plaintiff demurred. On the 7th of August, 1799, Ross brought Banks into court, and offered to surrender him, and at the same time offered a plea, that since the last continuance, to wit, on the 15th of May, and not before, Banks had been liberated from his imprisonment in Philadelphia, and that, on the same day, he took him, and then had his body, &c. To this plea, likewise, the plaintiff demurred generally. The county court gave judgment for the plaintiff upon the demurrer; and upon an appeal to the district court, the judgment was, there, affirmed; from which an appeal was taken to this court.
*The appellant’s counsel insisted, 1. That the motion for enlarging the time for surrender was legal; and consequently that the county court did right in allowing it. 2. That the disability of Ross to surrender Banks, arose from an act of law in an independent state; and therefore was a just ground for an exoneretur. 3. That the tender of Banks’s body by Ross in discharge of his recognisance, ought to have been received.
As to the first point:
In England, by rule of court in the king’s bench, the bail shall have eight days after the return of the writ to bring in the body of the principal, 1 Ld. Raym. 721; and several cases were cited to shew, that the courts there have extended the time of the surrender, under particular circumstances. 1 Stra. 419, 443. But those cases were during the pendency of a ■writ of error. It was also contended, that the surrender being impossible at the time of the scire facias returned, the court might enter an exoneretur, where the principal was made a peer. 1 Dougl. 45. But the cases are not alike; for Banks was in prison in Philadelphia when Ross undertook for him; whereas, in the other case, the principal was made a peer, after the undertaking of the bail. The law gives, to the bail, a warrant to take his principal, if he be at large; but a peer cannot be taken upon any such warrant: and therefore the surrender became legally impossible by matter ex post facto, and not by matter antecedent. It appears from this record that Banks was committed to jail at the suit of John Ery, on the 19th of February, 1797; and Ross’s undertaking was not until the 7th of November following. If there was an impossibility to surrender him in consequence of this imprisonment, Ross knew it at the time, and it was his folly to undertake to do an impossible thing. But it was well observed, that there was no impossibility in the case, as Ross might have procured his enlargement, either by paying the debt for which he was arrested in Philadelphia, or by bailing him, or procuring him to be bailed, if he had thought proper to comply *with his undertaking in this suit. The cases of the aliens in England, 6 T. Rep. 50, 52, 247, and that of the convict, Ibid. 247, were relied on in favour of Ross, but in fact make against him. The impossibility of surrendering the principal in those cases, did not exist at the time of the undertaking; but, in that of Ross, the record which he produced, and the evidence offered, to the court, in support of the motion, prove that the impossibility (if such indeed there was) did exist, at the time he undertook; and that he was con-usant of it, is fairly presumable from that evidence, inasmuch as Banks had been arrested in Philadelphia near nine months before. The case of Coles v. De Hayne, 6 T. Rep. 52, 147, will shew that the court, in exercising its legal discretion, did not lose sight of the possibility, that the bail might be in fact indemnified by his principal; an enquiry which the county court of Henrico entirely omitted to make of Ross. That court, not satisfied with enlarging the term for the surrender of Banks, contrary to all judicial precedent, undertook to decide what ought to be done in case he should die. The proceedings of the 9th and 10th of March, 1798, therefore, appear to me to have been contrary to sound legal discretion, and consequently erroneous.
But let us suppose, that there was no error in those proceedings, and that the *964 court exercised a sound discretion in extending’ the period when the surrender might be made? Has Ross complied with the .terms of the order? Forty days from the time that Banks should be discharged from his imprisonment in Philadelphia, were allowed by the court for bringing in his body; but more than twice that period elapsed before he was produced by his bail. The terms, therefore, not being complied with, Ross, even under that point of view, can claim no benefit from the order for enlarging the time.
But it has been said, that between the time of Banks’s enlargement on the 15th of May, and the day when his body was tendered in court, to wit, on the 7th of August following, no surrender could be made, because there was no court.
*This admits of two answers:
1. By the act of 1792, ch. 66, sect. 31, the surrender might have been made to the sheriff; which would have been as effectual, as if it had been made to the court.
2. By a fair interpretation of that clause, and of the 59th section of the county court law (1792, ch. 67, sect. 59), which directs that the proceedings of those courts, in common law cases, shall, as nearly as may be, conform to the practice of the district courts, I am strongly inclined to believe the surrender might have been made at a monthly court, as well as at a quarterly session. These acts, having passed at the same session, are to be expounded with reference to each other.
A few words more' upon the merits of this case, upon the hardship of which, such prodigious stress has been laid by the appellant’s counsel.
If Banks be insolvent, his creditor must lose a just debt, or Banks must pay it. The creditor was on the point of obtaining judgment for his debt, when Ross, either to relieve himself from his undertaking as common bail for Banks, or as a mere volunteer, offered himself as security that Banks should pay the debt, or render his body in execution in satisfaction of the same. It is immaterial what were his inducements : In the former case, the creditor had already acquired a legal obligation for his debt, which could only be set aside by the appearance bail incurring another legal obligation, more beneficial to the bail, but not less obligatory in law, or ecfuity, in favour of the creditor. Admitting Ross to be perfectly innocent, and perfectly ignorant of Banks’s situation, this could not in the least affect the justice of the plaintiff’s case, either at law, or in equity, nor even in any moral point of view. Regarding the situation and the claims of the creditor of Ross, will the counsel for the latter affirm that his claim to relief is stronger than the creditor’s prior legal and equitable claim to be paid his debt? Hardihood itself could scarcely make the assertion.
*But if Banks be solvent, our law affords his special bail a speedy and summary remedy against him, I apprehend, Virg. Haws, 1794, ch. 75; for, as at present advised, I think the word recognizance, in that act, will bring a special bail within the benefit of the statute; for the execution against the special bail is grounded upon his recognizance; and the scire facias is only in the nature of a warning to him to shew cause, if any he can, against emanation of the execution; and, if he do not shew that his recognizance hath in fact never been forfeited, the execution issues of course. Therefore Ross has no hardship to complain of.
I have now done with the merits of the case; in which I have incidentally, as I conceive, touched upon all the points insisted upon by the appellant’s counsel. I shall now proceed to consider the case as it stands upon the pleas and demurrers.
1. As to the pleas:
The scire facias recites the judgment against Banks, and that Ross, on the 7th of November, 1797, undertook for him as special bail; and, in the usual form, calls upon him to shew, if any thing he hath, or can say, why the plaintiff should not have execution against him. The plea alleges that Banks, after- the rendition of the judgment, and at the time of issuing the writ of capias ad satisfaciendum, to wit: on the 14th of November, 1797, and on divers other days in the plea mentioned, (but not alleging for the whole time between the first and last of those days, and at the day of pleading that plea,) was and is legally imprisoned in the city of Philadelphia, in four different suits, &c. “as will appear more at large by copies of the records and proceedings in the said suits or actions, now here in court produced,” although none such appear in this record: So that since the time of the rendition of the judgment aforesaid, it hath not been, nor yet is, in the power of the said Ross to render the body, &c. on the said 14th day of November, 1797; or on either of the other days in the plea mentioned. To this plea, the plaintiff demurred.
*Upon a demurrer, the whole of the record is before the court, and they are to decide upon it accordingly. It is also a rule in pleading, that the defendant must answer to the whole matter contained in the plaintiff’s allegation; or it is bad, upon a general demurrer. This plea alleges no reason why Ross did not, or could not, surrender the body’ of Banks at any time between the 7th and 14th of November, 1797. Nor does it allege any reason why he might not have surrendered the body on any other day, or days, than those particularly named in the plea; but relies altogether on his not being able to do it on either of those days, only, leaving all the rest of the time, except five days particularly named in the plea, unanswered. This plea, therefore, is clearly bad in substance; and judgment on the demurrer thereto was rightly given for the plaintiff.
2. The second plea alleges, that Banks was released from his confinement on the 15th of May, 1799, and not before; and concludes with a tender of his body then in court, to wit, 7th August, 1799.
This plea is in nature of a supplemental plea to the former; and is pleaded as a plea puis darreign continuance. Unless it be connected with the former, it is perfectly unintelligible. If taken as an amendment *965 to it, it is liable to the same objection as the first. So that either way it is bad. And judgment was rightly given for the plaintiff upon the demurrer thereto.
Upon any ground upon which I have been able to consider this case, I am clearly and decidedly of opinion, that the judgment of the district court, affirming that of the county court, ought to be finally affirmed in this court.
ROANE, Judge.
I should find myself loath to admit, as was argued by one of the appellee’s counsel, that the general regulation in our act of assembly, prescribing the time within which a surrender of the principal may be made, deprives the court of their discretionary power to grant further relief to the bail, where his case may entitle him to such interposition. I rather consider that act as laying down a general ''rule, and sanctioning by legislative authority, a system of decisions on this subject which had already taken place in the courts. It never meant to abridge the power of the courts in relation to cases, the equity whereof did not fall within the just operation of the rule. It never meant to affect the power of the courts, for example, in cases where between the date of the recognizance, and of the time limited for the surrender, an act of law or of God, had rendered it impossible, or vain and fruitless, to make such surrender. These acts being beyond the control of the bail, and, in some cases, nugatory, and the courts considering the engagement of the bail in relation to the then situation of the parties, (6 Term Rep. 51) posterior circumstances, of the class just mentioned, will excuse the bail: But I can find no authority for excusing the bail on circumstances coeval with the recognizance, and releasing him from his obligation, on the ground of a mere state of things which existed at the time, and was therefore probably within the contemplation of the party entering into the recognizance.
I need not, however, scan these pleadings critically, to find out whether Banks were actually in custody at the date of the recog • nizance or not. I consider this circumstance as wholly immaterial.
If he were not then in custody, and was in Virginia, his going out of the state, which was entirely his own act and voluntary, was one of the very circumstances which the policy of the law had in view, in requiring the recognizance. His being arrested in Philadelphia was entirely consequential on his having left the state of Virginia.
If he were then in Philadelphia, though not in custody, the bail warranted that his (Banks’s) situation was not such as should prevent a delivery of his person. It was Banks’s own situation in respect of debts produced by his own acts, and not by an act of government, of God, or the law, (except so far as the application of the law was produced by that situation,) which caused his imprisonment.
I presume that the bail stipulates against impediments arising from the acts or situation of the principal himself, '^except where such situation has been produced by causes of the class before mentioned, over which neither the principal nor the bail can have any control. I suppose, also, that it cannot be said that the predicament of a debtor exhibits a situation of this sort, i. e., one beyond the control of the parties.
But if Banks were actually in custody at the time, which seems to have been the fact, the case is still the same. This situation does not create an impossibility of surrender within the time. If it did, the condition of the recognizance would be discharged, and the obligation would stand single. 1 Bac. Ab. 649.
It may be possible to surrender him in due time, although in custody at the date of the recognizance, by various means; as payment of the debt, and a consequential release; or it may, intermediately, be found, that the principal owed nothing, and so obtain his discharge.
On the whole, I find it difficult to say much on a case which is so extremely plain. I never had the least doubt even on the former argument. As for the justice of the case, it may probably be with the appellee, and the appellant may stand indemnified for aught we know. Be this, however, as it may, the general provision of our act of assembly proscribes the relief granted by the county court, and the appellant cannot sustain his application upon any of the grounds on which, as far as I can discover, the discretionary power of the court has been exercised. I am therefore of opinion that the judgment ought to be affirmed.